**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 22-10082 |
| | § | |
| WESTBANK HOLDINGS, LLC, et al., | § | CHAPTER 11 |
| | § | |
| DEBTORS.[1] | § | SECTION A |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the following matters:

(i)  The *Final Fee Application of Fishman Haygood, LLP as Counsel for the Liquidating Trust* (the "Fishman Haygood Fee App"), [ECF Doc. 1282], filed by the law firm of Fishman Haygood, LLP, and the objection to that fee application filed by the law firm of Alvendia, Kelly & Demarest, LLC, [ECF Doc. 1308]; and

(ii)  The *Final Fee Application of Alvendia Kelly & Demarest LLC* (the "AKD Fee App"), [ECF Doc. 1303], and the objections to that fee application by Fishman Haygood, [ECF Doc. 1309], and the Federal National Mortgage Association d/b/a/ Fannie Mae, [ECF Doc. 1378].[2]

The Court initially scheduled an evidentiary hearing when these matters appeared before the Court.  Given the record before the Court, however, the text of § 328 of the Bankruptcy Code and binding circuit law interpreting § 328 leave this Court with no discretion in ruling on the AKD Fee App.

---

[1]  On February 4, 2022, the Court issued an Order directing joint administration of the chapter 11 bankruptcy case of Westbank Holdings LLC, as lead case, with the chapter 11 bankruptcy cases of affiliated debtors Cypress Park Apartments II LLC (No. 22-10083), Liberty Park Apartments LLC (No. 22-10084), Forest Park Apartments LLC (No 22-10085), and Washington Place LLC (No. 22-10086). [ECF Doc. 17]. On March 14, 2022, the Court entered an Order further directing joint administration of the case of affiliated debtor Riverview Apartments LLC with those cases.  [No. 22-10176, ECF Doc. 19].

[2]  The Fishman Haygood Fee App was filed on March 13, 2025.  After a status conference among the parties, the Court issued a Scheduling Order on March 27, 2025, including deadlines for AKD to file its own fee application and object to the Fishman Haygood Fee App.  [ECF Doc. 1286].  The evidentiary hearing to decide both fee applications was set for May 20, 2025.  *See id.*  On May 19, 2025, the Court continued the evidentiary hearing to July 24, 2025. [ECF Doc. 1332]. In preparing for trial, the Court determined that no evidentiary hearing was required to dispense with the fee applications and converted the evidentiary hearing to a status conference *sua sponte* on July 24, 2025, to discuss its concerns with the parties.  Fannie Mae filed an untimely limited objection to the AKD Fee App without leave on August 8, 2025.  The Court nevertheless read and considered Fannie Mae's objection.

## JURISDICTION

Subject matter jurisdiction over these matters lies under 28 U.S.C. § 1334(b) and the fee applications are properly before this Court pursuant to 28 U.S.C. § 157.  *See U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 303–05 (5th Cir. 2002).  This Court also has jurisdiction to interpret and enforce its own prior orders, including the AKD § 328 Order (as defined herein) and the Order dated April 20, 2023, confirming the plan of reorganization in these jointly administered cases.  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)).  Further, the confirmed plan of reorganization expressly reserves and retains this Court's jurisdiction to consider both fee applications.  [ECF Docs. 966 & 916, §§ 13.1 & 13.2].[3]

---

[3]    In pertinent part, the confirmed plan's jurisdiction-retention provisions include:

**13.1 Claims and Actions.**  Following the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Bankruptcy Cases to the maximum extent legally permissible, including without limitation, such jurisdiction as is necessary to ensure that the purposes and intent of the Plan are carried out.  The Bankruptcy Court shall also expressly retain jurisdiction:  (a) to hear and determine all Claims against the Debtors which arise prior to the Effective Date and (b) to enforce all Avoidance Actions or other Causes of Action which may exist on behalf of the Estates, including the Retained Causes of Action as defined in Schedule I hereto.

**13.2 Retention of Additional Jurisdiction.**  Pursuant to Sections 1334 and 157 of Title 28 of the United States Code, following the Effective Date, the Bankruptcy Court shall also retain jurisdiction for the purpose of the classification of the Claims, the re-examination of Claims which have been allowed and the determination of such objections as may be filed to the Claims, including proceedings under Section 502(c) of the Bankruptcy Code for estimation of claims.  The Bankruptcy Court shall further retain jurisdiction for the following additional purposes:

(a) To enforce and interpret the terms and conditions of the Plan;

. . . .

(c) To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

(d) To hear and determine any timely objections to Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Claim;

. . . .

At best, however, the Court holds concurrent jurisdiction with Louisiana state courts to hear and decide the Fishman Haygood Fee App. The Court concludes that abstention pursuant to 28 U.S.C. § 1334(c)(1) is appropriate with respect to the Fishman Haygood Fee App. *See Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 222–23 (Bankr. N.D. Tex. 2004). Fishman Haygood may exercise its state-law rights under its post-Effective Date contract to pursue recovery from the Liquidating Trust in another forum.

---

(h) To hear and determine any and all applications of compensation and reimbursement of expenses and the reasonableness of any fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

. . . .

(m) To enforce and interpret the terms and conditions of the Plan, to resolve any disputes, controversies or suits arising under or in connection with the interpretation, enforcement or consummation of the Plan, to effectuate payments under the Plan, and to compel performance by any person in accordance with the provisions of the Plan;

(n) To determine all questions and disputes regarding the assets of the Debtor and the Estates, including all Causes of Action, controversies, disputes or conflicts, whether or not subject to any pending action as of the Effective Date, between the Debtors, Liquidating Trustee, Liquidating Trust, and any other party, including, without limitation, any right to recover assets pursuant to the provisions of the Bankruptcy Code;

. . . .

(t) To determine such other matters or proceedings as may be provided for under Title 28 or any other title of the United States Code, the Bankruptcy Code, the Bankruptcy Rules, other applicable law, the Plan or in any order or orders of the Bankruptcy Court, or any order which may arise in connection with the Plan or the Confirmation Order.

Until the Bankruptcy Cases are closed as provided herein, the Liquidating Trustee may commence a proceeding in the Bankruptcy Court in respect of any matter as to which jurisdiction has been retained herein. Insurance Claims may be pursued in a court that has jurisdiction to hear them. Any holder of an Allowed Claim may commence a proceeding in the Bankruptcy Court in respect of any matter related to its Allowed Claim as to which jurisdiction has been retained herein. The retention of jurisdiction provided for herein shall be exclusive so as to preserve for the Liquidating Trustee and other parties-in-interest the benefits of the Plan, subject to the Bankruptcy Court's power under Section 305 of the Bankruptcy Code or 28 U.S.C. § 1334(c) to abstain as to all or part of a proceeding.

[ECF Doc. 916, §§ 13.1 & 13.2].

## RELEVANT BACKGROUND

The following facts are undisputed and taken from the record in these jointly administered cases:

### The AKD § 328 Order

Before filing for chapter 11 bankruptcy relief, each of the above-captioned Debtors (Westbank Holdings LLC, Cypress Park Apartments II LLC, Liberty Park Apartments LLC, Forest Park Apartments LLC, Washington Place LLC, and Riverview Apartments LLC) served as a holding company for multifamily apartment buildings and provided subsidized-rental housing for low-income families in the greater New Orleans area. [ECF Doc. 444, ¶ 1]. Joshua Bruno acquired the properties in December 2014 and March 2018; Fannie Mae held notes and perfected mortgages and assignments of leases and rents on the properties. *See id*. ¶ 2. Bruno served as the sole managing member of those entities. *See id*. ¶ 3.

On August 29, 2021, Hurricane Ida made landfall in Louisiana as a Category 4 hurricane. On October 27, 2021, on behalf of his closely held holding companies, Bruno retained the affiliated law firms of Alvendia, Kelly & Demarest, LLC, Glago Williams, LLC, and Irpino, Avin & Hawkins on a contingency-fee basis to prosecute all insurance claims held by those entities related to damages caused by Hurricane Ida, related theft, and vandalism (the "Hurricane Ida Claims"). [ECF Doc. 60, Ex. A]. On January 27, 2022, five of Bruno's affiliated entities filed chapter 11 petitions for bankruptcy relief and, on February 22, 2022, the sixth entity joined the others in filing a chapter 11 petition.

On March 16, 2022, Debtors' bankruptcy counsel filed an application pursuant to 11 U.S.C. §§ 327(e) and 328 to approve J. Bart Kelly III and his law firm of Alvendia, Kelly & Demarest, LLC (together, "AKD") as special counsel for the Debtors to allow AKD to continue to pursue

4

Hurricane Ida Claims on a contingency-fee basis. [ECF Doc. 60]. Fannie Mae and the United States Trustee ("UST") filed objections to the Debtors' application and took issue with several terms of AKD's prepetition retention agreement executed with Bruno that was attached as an exhibit to the application. [ECF Docs. 101 & 102]. The UST objected to the following provisions in AKD's prepetition contract:

a.     Section 2 wherein the Debtors give Special Counsel a power of attorney to: a) bring, open and handle an insurance claim, b) file and prosecute a lawsuit at any time at the Special Counsel's discretion, c) receive settlement or other proceeds, and d) do anything generally which the Special Counsel may deem necessary and/or advisable.

b.     Section 3 which provides that Special Counsel may employ or associate additional and/or associate counsel to work with the Special Counsel furthering Debtors' claims.

c.     Section 5 wherein the Debtors deliver to Special Counsel an undivided interest in Debtors' claims to satisfy said Attorney's Fees and any litigation costs and expenses, advances, loans and interest incurred by the Special Counsel in furtherance of Debtor's claims.

d.     Section 9 which provides that if Special Counsel resigns or is discharged or disqualified or otherwise ceases to serve as Debtor's attorney prior to a settlement or final judgment, Special Counsel shall receive as compensation for the Special Counsel's services reasonable fees based on all of the facts and circumstances deemed relevant by Louisiana statutory law and/or jurisprudence, including the Special Counsel's valued hourly rates and the risk taken by the Special Counsel in accepting legal representation of Debtors on a contingency fee basis.

[ECF Doc. 102, ¶ 4]. The UST continued: "Many of these issues could be cured if Special Counsel agrees to typical bankruptcy protections wherein the Court is the final arbiter of fees and insurance settlements." *Id*. ¶ 5. In its objection, Fannie Mae asserted that the employment application was premature and should be considered after the Court resolved Fannie Mae's motion to appoint a chapter 11 trustee, which, at that time, was set for trial in May 2022, two months later. [ECF Doc. 101, at 5]. Fannie Mae also objected on the basis that AKD's claim to its contingency fee on

recoveries obtained prepetition gave way to an interest adverse to the Debtors such that AKD could not be retained as special counsel under § 327(e). *See id.* at 5–6.

At the hearing on the matter on April 6, 2022, with significant concessions made by the Debtors and AKD to the terms of AKD's prepetition retention agreement—including AKD's full waiver of any claims to fees on prepetition recoveries obtained—the UST withdrew its objection entirely. [ECF Doc. 1391]. Fannie Mae maintained its prematurity objection. *See id.* This Court overruled Fannie Mae's objection and entered an Order on April 14, 2022, materially changing AKD's prepetition retention agreement, approving the Debtors' retention of AKD as special counsel under § 327(e), and preapproving AKD's compensation on a contingency-fee basis under § 328, retroactive to each Debtor's petition date (the "AKD § 328 Order"). [ECF Doc. 129].[4] The AKD § 328 Order provided that, from any recovery for residential/commercial property damages, AKD would receive 21% after the initial tender or after denial of a Debtor's claims or 27% after a lawsuit is filed, and, from any recovery for business interruption, AKA would receive 21% before a lawsuit was filed or 27% after a lawsuit is filed. *See id.* The AKD § 328 Order also provided that AKD "shall be reimbursed for all out-of-pocket expenses from any recovery, with no expense to the estate should there be no recovery." *Id.*

---

[4] At the hearing on April 6, 2022, the Court specifically asked the parties if AKD's prepetition retention agreement would be amended and re-submitted to the Court to reflect the concessions and amendments agreed to by the Debtors and AKD, particularly because the prepetition retention agreement contained many illegible handwritten provisions. [ECF Doc. 1391]. Debtors' counsel stated the Debtors' preference that this Court's Order serve as the amended retention agreement and contain all terms of employment and compensation. *See id.* Counsel for Fannie Mae agreed, stating: "Just for clarification, I did not think we were approving Exhibit A as the form of the contract. The motion doesn't state it that way. I think we're relying on the Order as discussed to be the terms of the engagement." *Id.* Consistent with the Court's instructions at the hearing, Debtors' counsel circulated a form of Order to all parties in interest and submitted it to chambers. The Court entered the AKD § 328 Order as submitted by the parties. The AKD § 328 Order omitted the provision in AKD's prepetition retention contract providing for compensation in the event AKD is terminated or resigns. [ECF Doc. 129].

**The Chapter 11 Trustee Appointment and
Retention of Fishman Haygood as Bankruptcy Counsel**

After a four-day evidentiary hearing, on August 1, 2022, the Court issued a *Memorandum Opinion and Order* granting Fannie Mae's motion to appoint a chapter 11 trustee and instructing the UST to appoint a trustee to administer the Debtors' estates. [ECF Docs. 444 & 445]. On August 5, 2022, the Court issued an Order granting the UST's application to appoint Dwayne M. Murray as the Chapter 11 Trustee in these cases. [ECF Doc. 471]. On August 5, 2022, the Chapter 11 Trustee filed an application under § 327(a) of the Bankruptcy Code to employ the law firm of Fishman Haygood LLP "to act as bankruptcy counsel." [ECF Doc. 475]. The application identified the scope of professional services to be performed by Fishman Haygood; none contemplated that Fishman Haygood would pursue the Hurricane Ida Claims or even serve as co-counsel to AKD in the pursuit of those claims. *See id*. The application and declaration in support of the application proposed that Fishman Haygood would be compensated for reasonable and necessary services on an hourly basis. *See id*. No party in interest objected to the application and on October 17, 2022, the Court entered an Order granting the Chapter 11 Trustee's request on a final basis to employ Fishman Haygood as bankruptcy counsel; specifically, the Court ordered that Fishman Haygood "shall be entitled to receive reasonable compensation and reimbursement of actual, necessary expenses only after application to the Court and on notice and hearing" per § 330 of the Bankruptcy Code. [ECF Docs. 498 & 564].

The Chapter 11 Trustee never filed any request to expand the scope of Fishman Haygood's representation beyond that of bankruptcy counsel.[5]

---

[5] Fishman Haygood filed and noticed for hearing two interim fee applications and one final fee application pursuant to § 330 of the Bankruptcy Code requesting allowance of its claims for fees and reimbursable expenses for services performed as bankruptcy counsel. [ECF Docs. 803, 1073 & 1151]. With no objections to the fee applications filed, all three were approved by this Court; in sum, the Court

**AKD Files Suit on Behalf of the Debtors' Estates To Recover Damages
on the Hurricane Ida Claims**

On January 16, 2023, AKD filed lawsuits on behalf of the two largest Debtors, Westbank Holdings LLC and Cypress Park Apartments II LLC, against several insurers to litigate Hurricane Ida Claims in the 24th Judicial District Court for the Parish of Jefferson, Louisiana. [E.D. La., No. 23-00320, ECF Doc. 1, Ex. A; E.D. La. No. 23-00319, ECF Doc. 1; Ex. A]. On January 25, 2023, the insurers removed the case from the Louisiana state court to the United States District Court for the Eastern District of Louisiana (the "District Court"), where the cases were allotted to two different sections of the District Court (the "Removed Ida Cases"). [E.D. La. No. 23-00320, ECF Doc. 1; E.D. La. No. 23-00319, ECF Doc. 1].

**The Court Confirms Fannie Mae's Proposed Plan of Reorganization**

On April 19, 2023, after a one-day evidentiary hearing, the Court issued a *Memorandum Opinion and Order* stating reasons for confirming a plan of reorganization proposed by Fannie Mae; the following day, the Court issued an Order confirming that plan and denying as moot a plan proposed by Bruno. [ECF Docs. 965 & 966]. In relevant part, the confirmed plan incorporated the Chapter 11 Trustee's sale of the Debtors' immovable assets at auction by establishing a Liquidating Trust in which undistributed sales proceeds and any remaining assets, including the Hurricane Ida Claims, would be placed free and clear of all liens but Fannie Mae's. [ECF Doc. 916, arts. V & VI]. The plan contemplated that a Liquidating Trustee would administer the Liquidating Trust and make distributions according to the plan's treatment of creditor classes, with oversight by a Liquidating Trust Advisory Board comprised of three members, two appointed

---

awarded Fishman Haygood an allowed administrative expense claim of $924,991.57 in fees and $15,881.43 in reimbursable expenses. [ECF Docs. 969, 1107 & 1187].

by Fannie Mae as the plan proponent and one appointed by the Sewerage & Water Board of New Orleans, one of the Debtors' largest general unsecured creditors. [ECF Doc. 916, art, VI].

### AKD's First Fee Application

On September 8, 2023, the Chapter 11 Trustee, through Fishman Haygood as bankruptcy counsel, filed an application for compensation on behalf of AKD, seeking to compensate AKD under the AKD § 328 Order for pre-suit recovery of insurance proceeds in the amount of $4,367,082.43 paid directly to the Chapter 11 Trustee in December 2022 in partial satisfaction of Hurricane Ida Claims ("First Fee App"). [ECF Doc. 1112]. The Chapter 11 Trustee urged this Court "to allow and disburse to [AKD] $917,087.28 in attorney fees and $462,508.75 in expert costs, due and payable now based on the recovery of insurance proceed[s]." *Id*. On September 27, 2023, Fannie Mae filed an objection to the First Fee App, arguing:

> After the Debtors retained [AKD], a chapter 11 trustee was appointed and the trustee retained a separate law firm, Fishman Haygood, to pursue the same insurance recoveries. [AKD] and Fishman Haygood have served as co-counsel in pursuing Hurricane Ida claims, and substantial litigation is still ongoing.
>
> On September 8, 2023, [AKD] filed the Application in which it seeks an interim award and payment of more than $900,000, which represents 21% of the initial tenders made on Hurricane Ida insurance claims that have not been fully settled or adjudicated. [AKD's] claims for "interim" compensation should be denied because (i) the request is premature in that the amount of the "settlement, award or judgment" has not yet been determined, (ii) the request fails to acknowledge or deduct for the fees incurred by [AKD's] co-counsel which ha[ve] already been awarded by the Bankruptcy Court, and (iii) depending on the outcome of the remaining litigation, certain of the fees requested may need to be allocated and paid to Fishman Haygood or other co-counsel involved in seeking recoveries for the estate (or the liquidating trust).

[ECF Doc. 1127, at 2]. AKD filed its own reply brief in support of the First Fee App, observing that neither the Chapter 11 Trustee nor his bankruptcy counsel, Fishman Haygood (which filed the First Fee App on behalf of special counsel AKD) objected to the payment of the contingency fee and reimbursement of costs. [ECF Doc. 1133]. AKD asserted that

after the $4.3 million in funds at issue in this Application were acquired by AKD in early December of 2022, submission of this Application was delayed for months, during further intense mediation and settlement efforts by AKD and then by unsuccessful efforts by counsel for the Trustee to receive Fannie Mae's approval before its submission. . . .

Thus, AKD has very patiently awaited payment for almost a year in a highly inflationary environment, while accruing significant interest on its line of credit used to finance the key case costs in this matter.

*See id*. at 1.

At a hearing to consider the First Fee App on October 18, 2023, Fannie Mae conceded that Mr. Murray, now serving as Liquidating Trustee (see below), had not engaged other counsel to handle the Hurricane Ida Claims and that no other law firm claimed a fee from the recovery thus far on those claims. [ECF Doc. 1141]. Fannie Mae admitted that no event incapable of being anticipated had occurred that would justify the Court adjusting compensation under the AKD § 328 Order under controlling Fifth Circuit law. *See id*. Fannie Mae continued to press the argument, however, that AKD should wait until all of the claims had been settled or reduced to judgment before receiving compensation. *See id*. Fannie Mae reasoned that Louisiana state law would eventually govern a fee dispute between AKD and any other law firm that would be engaged to prosecute the Hurricane Ida Claims in the future, which would require "some court" to perform a *quantum meruit* analysis to determine a fee split. *See id*. Fannie Mae further urged this Court to award AKD fees in line with other estate professionals, whose employment orders were approved under § 327 and allowed for interim awards of 80% of requested fees with a 20% holdback pending final fee approval. *See id*. Emphasizing the fact that the Court preapproved AKD's fees under § 328, not § 327, the Court rejected Fannie Mae's arguments and awarded AKD all of the fees and costs requested by the Chapter 11 Trustee in the First Fee App. [ECF Docs. 1141 & 1149].

**The Plan Goes Effective**

On September 20, 2023, the Chapter 11 Trustee filed a *Notice of Effective Date*, representing that all conditions precedent to the confirmed plan becoming effective and binding on all parties had been satisfied and identifying himself as having been appointed as the Liquidating Trustee for the Liquidating Trust.  [ECF Doc. 1119].  He contemporaneously filed a *Notice of Appointment of Liquidating Trust Advisory Board*, identifying members including bankruptcy counsel to Fannie Mae in these proceedings, and an executive in Special Asset Management for Fannie Mae, as well as bankruptcy counsel for the Sewerage & Water Board of New Orleans.  [ECF Doc. 1118].  On the Effective Date, the Liquidating Trust was established and all undistributed sales proceeds and other remaining estate assets, including the Hurricane Ida Claims, were transferred to the Liquidating Trust.  The bankruptcy estates ceased to exist.

**The Liquidating Trust**

The confirmed plan established the Liquidating Trust as the entity though which the terms of the confirmed plan would be implemented.  Per § 6.1 of the confirmed plan:

> On the Effective Date, the Chapter 11 Trustee and the Liquidating Trustee shall execute the Liquidating Trust Agreement and shall take all other necessary steps to establish the Liquidating Trust and the beneficial interests therein.  Such Liquidating Trust Agreement, with the consent of Fannie Mae, may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Liquidating Trust as a liquidating trust for United States federal income tax purposes, or otherwise materially affect the recovery of holders of Allowed Claims . . . .

[ECF Doc. 916, § 6.1].  No draft of the Liquidating Trust Agreement was attached as an exhibit to the plan proposed by Fannie Mae and confirmed by this Court.

The confirmed plan bestowed duties and authority upon the Liquidating Trustee:

> From and after the Effective Date, the Liquidating Trustee shall administer the Plan for the benefit of Creditors holding Allowed Claims and Ultimately Allowed Claims in an expeditious manner and in accordance with and subject to

11

the terms hereof. In such capacity, the rights, responsibilities and duties of the Liquidating Trustee shall include, without limitation, (i) making Distributions to holders of Allowed Claims or Ultimately Allowed Claims in accordance with the provisions of the Plan; (ii) exercising avoidance powers and prosecuting Avoidance Actions, Insurance Claims and other Causes of Action of the Chapter 11 Estates, including pursuing, prosecuting, litigating, settling, and otherwise resolving any actions commenced; (iii) preparing tax returns and processing payment of taxes owed by the Debtor or the Liquidating Trustee; (iv) preparing any reports required by the Bankruptcy Court with respect to all aspects of the administration of the Estates; (v) objecting to Claims, prosecuting objections, litigating, settling and otherwise resolving issues with respect to Disputed Claims; (vi) **retaining brokers, auctioneers, attorneys, accountants and other agents necessary to assist and advise the Liquidating Trustee in the performance [of] its duties**; and (vii) otherwise administering implementation of the Plan, including taking all actions necessary to effectuate the terms of the Plan, the Order confirming the Plan and any other applicable order(s) of the Bankruptcy Court.

[ECF Doc. 916, § 6.2] (emphasis added).

The plan further describes the powers and obligations of the Liquidating Trustee:

Pursuant to the terms and provisions of the Plan, the Liquidating Trustee shall be empowered and directed to (a) take all steps necessary (including litigation) to recover all possible Assets to satisfy all Claims in full; (b) liquidate Assets, including but not limited to being authorized to sign agreements, deeds, and bills of sale conveying title to Assets to any Purchaser(s); (c) make Distributions contemplated by the Plan (d) comply with the Plan and the obligations thereunder; (e) **employ, retain or replace Professionals to represent it with respect to its responsibilities**; (f) make reports regarding the status of Distributions under the Plan; (g) exercise such other powers as may be vested in the Liquidating Trustee pursuant to order of the Bankruptcy Court, or the Plan, including, but not limited to taking appropriate action as may be necessary to pursue, sue, litigate, preserve, protect and recover all Assets and monies and Causes of Action, and to liquidate the Assets it recovers. The Liquidating Trustee may prosecute or defend any action in its name, the name of the Estate, or any other lawful name.

[ECF Doc. 916, § 6.8] (emphasis added). Giving more clarity on the Liquidating Trustee's

authority to retain professionals, the confirmed plan provides:

**The Liquidating Trustee may retain and reasonably compensate counsel and other Professionals to assist in its duties as the Liquidating Trustee on such terms as the Liquidating Trustee, with consent from the Liquidating Trust Advisory Board, deems appropriate, including on a contingent fee basis, and without Bankruptcy Court approval.** The Liquidating Trustee may, but is not require[d] to, retain any Professional who represented the Chapter 11 Trustee

in the Bankruptcy Cases.   **Compensation of Professionals retained by the Liquidating Trustee shall be paid from the assets in the Liquidating Trust.**

[ECF Doc. 916, § 6.9] (emphasis added).

### The Court Grants a Motion To Compel Arbitration of the Hurricane Ida Claims and Approves a Final Settlement of All Claims

In May 2023 and November 2023, the District Court referred the Removed Ida Cases that had been filed by AKD on behalf of the Debtors to this Court as "related to" the Debtors' bankruptcy cases pursuant to 28 U.S.C. § 157(a), initiating two adversary proceedings in the Bankruptcy Court.  [Adv. No. 23-1010, ECF Doc. 1; Adv. No. 23-1043, ECF Doc. 1].[6]

In February 2024, this Court granted defendant insurers' motions to compel arbitration of the Hurricane Ida Claims filed in the adversary proceedings.  [Adv. No. 23-1010, ECF Doc. 22; Adv. No. 23-1043, ECF Doc. 15].  A year later, on February 3, 2025, the Liquidating Trustee filed a motion in the main bankruptcy case, asking this Court to approve a settlement of the Hurricane Ida Claims pursuant to Bankruptcy Rule 9019 for $13.5 million (the "9019 Motion").  [ECF Doc.

---

[6]      On November 1, 2023, the Liquidating Trustee, filed an *ex parte* motion, unopposed by the defendant insurers, to substitute the Liquidating Trust as the proper party plaintiff for the Debtors in one of the Removed Ida Cases and enroll Fishman Haygood as counsel of record.  [Adv. No. 23-1010, ECF Doc. 19].  The motion stated in pertinent part:

> The Confirmed Plan and Liquidating Trust Agreement both provide that the Liquidating Trustee is authorized to engage counsel to represent the Liquidating Trust in litigation and other proceedings relating to the Insurance Claims, including this Adversary Proceeding.  The Liquidating Trustee's selection of counsel is subject to the consent of the Liquidating Trust Advisory Board.

> With the consent of the Liquidating Trust Advisory Board, the Liquidating Trustee has engaged Brent B. Barrier, Michael R. Dodson, Cherie D. Nobles, and Kaja S. Elmer of Fishman Haygood, L.L.P. and request these attorneys be enrolled as counsel of record for the Liquidating Trust in this Adversary Proceeding.

*Id.* ¶¶ 15–16.  A similar motion had been filed on the District Court docket in the second Removed Case but never ruled upon; that motion was docketed in the second adversary proceeding on February 23, 2024.  [Adv. No. 23-1043, ECF Doc. 12].  This Court processed Orders on both *ex parte* motions in those adversary proceedings.  [Adv. No. 23-1010, ECF Doc. 20; Adv. No. 23-1043, ECF Doc. 13].

1277].   With regard to settlement of estate claims and causes of action, the confirmed plan

provides:

> 6.2.1.   . . . The Liquidating Trustee shall consult with the Liquidating Trust
> Advisory Board with respect to (i) the pursuit, settlement or resolution of Causes
> of Action; (ii) the retention of advisors; (iii) objections, compromises, or
> settlements to any Claims; and (iv) the amount and timing of Pro Rata Distributions.
> . . .   Any compromise or settlement of any Cause of Action, Policy Causes of Action
> and Retained Causes of Action exceeding the amount of $200,000 shall be
> approved by both the Liquidation Trustee and the Liquidation Trust Advisory
> Board.   **In the event the Liquidation Trustee and the Liquidation Trust
> Advisory Board cannot agree, the Liquidation Trustee may seek Bankruptcy
> Court approval of any such settlement.**
>
> . . . .
>
> 6.7   **Continuing Court Jurisdiction**.  The Bankruptcy Court shall have
> continuing jurisdiction over all matters related to the Liquidating Trust including
> approval of any compromise and settlement in excess of $200,000.00 that is not
> approved as required by Section 6.2.1.

[ECF Doc. 916, §§ 6.2.1 & 6.7] (emphasis added).  Further, the section of the confirmed plan

governing "Compromise and Settlement of Certain Classes of Controversies" also provides:

> From and after the Effective Date, all controversies pending before any court other
> than the Bankruptcy Court shall constitute a class of controversies under Rule
> 9019(b) of the Bankruptcy Rules and, except as otherwise provided in this Plan,
> **the Liquidating Trustee may compromise or settle any controversy in such
> class without further approval by the Bankruptcy Court.**

[ECF Doc. 916, § 12.2] (emphasis added).  The Liquidating Trustee acknowledged in the 9019

Motion that the confirmed plan did not contemplate this Court's oversight or approval of the 9019

Motion (presumably because the Liquidating Trust Advisory Board consented to the settlement),

but he noted that "out of an abundance of caution and as a condition of the Settlement Agreement,

the Trustee seeks this Court's approval" of the 9019 Motion.  [ECF Doc. 1277, at n.4].

The Liquidating Trustee stated in the 9019 Motion that, on January 23, 2023, the parties

engaged in mediation but were unsuccessful in resolving the claims.  [ECF Doc. 1277, ¶ 22].  The

9019 Motion represented that arbitration proceedings had been scheduled in each of the Removed

Cases for April/May 2025 and June/July 2025, but the parties had continued to mediate in December 2024 and were ultimately able to settle the Hurricane Ida Claims in January 2025. [ECF Doc. 1277, ¶¶ 17–18 & 23–24]. The Liquidating Trustee noticed the 9019 Motion for hearing and, on February 26, 2025, with no objections being timely filed, the Court granted the 9019 Motion without hearing. [ECF Doc. 1280].

Paragraph 28 of the 9019 Motion contained the following provision:

> **Consistent with prior order of this court**, the Liquidating Trustee shall reserve the sums of $3,750,000 as the Attorneys' Fee Fund for the payment of attorneys' fees and other professionals (excluding the Liquidating Trustee) who provided services for which they have not been compensated and which contributed to the recovery of the Settlement Fund and represented in the Coverage Proceedings. Professionals shall look to the Attorneys' Fee Fund for payment of their respective claims and have no claim whatsoever against the Insurers.

[ECF Doc. 1277, ¶ 28] (emphasis added). The Order approving the 9019 Motion submitted by the parties and signed by this Court on February 26, 2025, identified in the preamble the sum of $3.75 million as "Escrowed Funds" to be used "to fund (a) the 'Attorneys' Fee Funds' which is the fund consisting of twenty-seven (27%) percent of the Settlement Proceeds net of Fishman Haygood's expenses and (b) Fishman Haygood's estimated expenses of $100,000." [ECF Doc. 1280, at 2]. The Order mandated that

> [t]he Escrowed Funds shall be held by the Liquidating Trustee pending and subject to further orders of this Court. Any and all attorneys and professionals claiming fees or expenses in any way relating to the Covered Proceedings, shall look solely to the Escrowed Funds for compensation and may not assert any claim for compensation, fees or expenses against the Insurers.

[ECF Doc. 1280, ¶ 7].[7]

Because the amount of the "Attorneys' Fee Fund" referenced in paragraph 28 of the 9019 Motion reserved approximately 27% of the total $13.5 million recovery, the Court assumed at the

---

[7] Twenty-seven percent of $13.5 million is $3,645,000. The sum of $3,750,000 reserved in the Attorneys' Fee Fund reserves amounts for fees and reimbursement of expenses.

time that the phrase "consistent with prior order of this court" in paragraph 28 referred to the AKD § 328 Order, which provided a 27% post-suit contingency fee on any recovery from pursuit of the Hurricane Ida Claims plus expenses. But after the AKD Fee App and Fishman Haygood Fee App were filed in March 2025—each laying claim to the Attorneys' Fee Fund—the Court issued an *Order To Show Cause* to the Liquidating Trustee and the Liquidating Trust Advisory Board, asking the Liquidating Trustee to identify the "prior order of this court" to which he referred in paragraph 28 of the 9019 Motion. [ECF Doc. 1367]. The Liquidating Trustee referred the Court to its Order confirming the plan. [ECF Doc. 1385, ¶ 6 (citing ECF Doc. 965) & Ex. A, ¶ 13]. Although the Liquidating Trustee identified no specific provision of the confirmed plan or confirmation order to support the escrow of approximately 27% of the Hurricane Ida Claims recovery, the Court observes that the confirmed plan requires all allowed administrative expense claims to be paid in full when due. [ECF Doc. 916, § 2.1].

The 9019 Motion did not disclose that approximately fifteen months earlier, on October 23, 2023, the Liquidating Trustee, at the direction of the Liquidating Trust Advisory Board, fired AKD and signed a second, post-Effective Date, 27% contingency-fee agreement retaining Fishman Haygood to replace AKD in pursuing the Hurricane Ida Claims.

### The Fee Applications

On March 13, 2025, Fishman Haygood filed its fee application in the main bankruptcy case, citing 28 U.S.C. § 1334 as the basis for this Court's jurisdiction to consider the fee application. [ECF Doc. 1282]. The Fishman Haygood Fee App asserted the following:

> On October 23, 2023, the Liquidating Trust and Fishman Haygood entered into a Contingency Fee Contract ("Contingency Contract"), by which the Liquidating Trust engaged Fishman Haygood, *nunc pro tunc*, to represent the Liquidating Trust in the arbitration and all of the proceedings involving the Liquidating Trust and Defendants.

16

Pursuant to the Contingency Contract, in the event of a "Recovery," after reimbursement of all "Expenses" incurred by Fishman Haygood, the balance of the Recovery shall be allocated 73% to the Liquidating Trust and 27% ("Continency Fee") to the "Attorney Fee Fund."

Fishman Haygood incurred expenses in the amount of $73,697.51 . . . which include, among other things, expert fees, arbitration costs, research charges, printing costs, and filing fees. Thus, the balance of the Recovery is $13,426,302.49, and the amount allocated to the Attorney Fee Fund is $3,625,101.67.

Fishman Haygood seeks entry of an order approving an award of the entire Attorney Fee Fund as the Contingency Fee, and awarding all expenses incurred by Fishman Haygood. More specifically, Fishman Haygood requests an award of expenses of $73,697.51 and a fee of $3,625,101.67.

[ECF Doc. 1282, ¶¶ 34–37]. Fishman Haygood attached invoices and a summary of expenses to its application but cited no law or Order of this Court entitling it to an award. [ECF Doc. 1282]. AKD filed an objection to the Fishman Haygood Fee App. [ECF Doc. 1308].

On May 9, 2025, AKD filed its own fee application in the main case, noting the AKD § 328 Order and requesting $3,625,000 in fees less a voluntary reduction of $325,000, for a final request of $3.3 million. [ECF Doc. 1303, at 3, 20–21]. Fishman Haygood filed an objection to the AKD Fee App, attaching a copy of the post-Effective Date "Contingency Fee Contract" executed on October 23, 2023, whereby the Liquidating Trustee retained Fishman Haygood to litigate the Hurricane Ida Claims on a 27% contingency-fee basis. [ECF Doc. 1309, Ex. B]. Fishman Haygood also attached to its opposition a copy of an e-mail and letter dated October 23, 2023, whereby the Liquidating Trustee terminated AKD's legal services regarding the Hurricane Ida Claims:

The Liquidating Trust is governed by a three creditor committee ("Committee"), and the Committee has expressly authorized and directed me to engage Fishman Haygood, L.L.P. to represent the interests of Liquidating Trust in the Insurer Litigation and any related claims or proceedings. Conversely, the Committee has expressly instructed me that I am not authorized to retain your firm and further instructed me to advise you that you and your firm have not been engaged to represent the Liquidating Trust, are not authorized to represent the

17

Liquidating Trustee in any manner or proceeding, and should withdraw as co-counsel of record in the Insurer Litigation.

I look forward to your working with Fishman Haygood, L.L.P. to transition all files pertaining to the Insurer Litigation, to otherwise cooperate with the transition and to file the appropriate motions withdrawing your firm as co-counsel of record.

I very much appreciate your representation of me in my former role as Chapter 11 Trustee and what I am certain will be professional handling of this transition of the Insurer Litigation.

[ECF Doc. 1309, Ex. G]. Nothing in the record indicates that AKD was fired for cause.

The parties in this case—including the Liquidating Trustee and Fannie Mae—encourage this Court to employ a *quantum meruit* analysis to resolve the fee applications. But for the reasons stated below, that is not what applicable law allows.

## DISCUSSION

This Court approved the Debtors' application to retain AKD as special counsel under § 327(e) of the Bankruptcy Code to litigate the Hurricane Ida Cases on behalf of the estates and preapproved AKD's compensation under § 328(a) of the Bankruptcy Code during the first months of these jointly administered cases. Section 328(a) provides that

> [t]he trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. **Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.**

11 U.S.C. § 328(a) (emphasis added). The United States Court of Appeals for the Fifth Circuit has consistently interpreted § 328(a) "as meaning precisely what it says." *ASARCO, L.L.C. v. Barclays Capital (In re ASARCO, L.L.C.)*, 702 F.3d 250, 257 (5th Cir. 2012).

18

Once a bankruptcy court approves the terms of a professional's compensation under § 328(a), "the court may not stray from them at the end of the engagement unless developments subsequent to the original approval that were incapable of being anticipated render the terms improvident." *Id*. (citing *Gibbs & Brun LLP v. Coho Energy Inc. (In re Coho Energy Inc.)*, 395 F.3d 198, 204–05 (5th Cir. 2004); *Daniels v. Barron (In re Barron)*, 325 F.3d 690, 693 (5th Cir. 2002) (*Barron II*); *Daniels v. Barron (In re Barron)*, 225 F.3d 583, 586 (5th Cir. 2000) (*Barron I*). "Section 328(a) therefore creates a 'high hurdle' for a movant seeking to revise the terms governing a professional's compensation *ex post facto*." *Id*. at 258 (citations omitted). Fifth Circuit instructions are clear:

> Such a movant must show not merely that a compensation adjustment is appropriate in light of subsequent developments that were previously unforeseen or unanticipated by the parties; instead, the movant is tasked with the weightier burden of proving that the subsequent developments were incapable of being anticipated at the time the engagement was approved.

*Id*. (citing *Barron II*, 325 F.3d at 693 ("[T]he intervening circumstances must have been incapable of anticipation, not merely unanticipated."); *Barron I*, 225 F.3d at 586 ("It is not enough that the developments were simply unforeseen."). Thus, "[w]here the court pre-approves the terms and conditions of the retention under section 328(a), its power to amend those terms is severely constrained." *Riker, Danzig, Scherer, Hyland & Perretti v. Official Comm. of Unsecured Creditors (In re Smart World Techs., LLC)*, 552 F.3d 228, 232 (2d Cir. 2009).

Indeed, "[s]ection 328(a)'s establishment of such a 'high hurdle' was no accident." *In re ASARCO, L.L.C.*, 702 F.3d at 258. "Section 328(a) effects a significant departure from prior practice under the Bankruptcy Act in which professionals were entitled to reasonable compensation determined on a strictly *quantum meruit* basis." 3 COLLIER ON BANKRUPTCY ¶ 328.02 (Richard Levin & Henry J. Sommer eds. 16th ed.) [hereinafter *Collier*]. "Congress enacted § 328(a) to eliminate the previous uncertainty associated with professional compensation

19

in bankruptcy proceedings, **even at the risk of potentially underpaying, or conversely providing a windfall to, professionals retained by the estate.**" *In re ASARCO, L.L.C.*, 702 F.3d at 258 (citing *In re Coho Energy*, 395 F.3d at 204 ("When [the bankruptcy court's fee discretion began to dissuade professionals from offering their services to debtors, Congress passed section 328(a) of the bankruptcy code, which allowed professionals to have greater certainty as to their eventual payment.")) (emphasis added).

"Section 328(a) thus provides a mechanism to **cement definite compensation terms at the beginning of a professional's engagement** . . . ." *Collier*, ¶ 328.02 (emphasis added).  As explained by the Fifth Circuit:

> [P]rofessionals employed by the estate have the option of being compensated under either § 328(a) or § 330(a).  Section 328 applies when the bankruptcy court approves a particular rate or means of payment [at the outset of the engagement], and § 330 applies when the court does not do so.  Section 330(a) is a far more flexible provision, authorizing bankruptcy courts to award reasonable compensation for actual, necessary services rendered by the . . . professional person . . . .  Unlike § 328(a), § 330(a) affords bankruptcy courts broad discretion when determining the amount that professionals should be paid after they have completed their engagements.  This discretion enables bankruptcy courts to consider numerous factors—including (1) the loadstar, (2) those found in § 330(a)(3)'s non-exclusive list, and (3) those listed in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717–19 (5th Cir. 1974)—when determining "reasonable compensation."  As discussed above, however, professionals may avoid subjecting their fees to the inherent uncertainty associated with such court discretion by obtaining prior approval of their fee arrangements under § 328(a).  In doing so, however, professionals must accept the tradeoff presented by § 328(a).  That section's certainty and predictability come at the expense of flexibility:  The professionals would be underpaid if their engagements should require more work than they had initially expected.

*In re ASARCO, L.L.C.*, 702 F.3d at 260–61 (internal quotations, citations, and footnotes omitted).

"The differences between §§ 328 and 330 affect the timing and process of the court's review of fees."  *Miller Buckfire & Co. v. Citation Corp. (In re Citation Corp.)*, 493 F.3d 1313, 1318 (11th Cir. 2007).  Certainty is everything when it comes to attorney compensation under § 328(a) of the Bankruptcy Code:

> [U]nder § 328, the bankruptcy court reviews the fee at the time of the agreement and departs from the agreed fee only if some unanticipated circumstance makes the terms of that agreement unfair. Under § 330, the court reviews the fees after the work has been completed and looks specifically at what was earned, not necessarily at what was bargained for at the time of the agreement. Bankruptcy professionals are aware that the amount of any professional's fees will be less certain if the bankruptcy court awards fees under § 330. Such uncertainty prompted Congress to enact § 328 to allow professionals to have greater certainty as to the eventual payment.

*Id*. at 1318–19. Or put more plainly by a New York colleague:

> In other words, Section 328(a) reflects the view that professionals are entitled to know what they are likely to be paid for their work. If you agree to hire someone on a flat fee or a percentage-fee basis, there should be some comfort that the compensation will be paid and that a court will not simply impose a new and different deal after all the work has been done.

*In re Relativity Fashion, LLC*, No. 15-11989, 2016 WL 8607005, at *3 (Bankr. S.D.N.Y. Dec. 16, 2016).

In preapproving a fee arrangement under § 328(a), a bankruptcy court necessarily assesses the reasonableness of such terms. *See* 11 U.S.C. § 328(a) (stating that a trustee or official committee "with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment . . . ."). At the beginning of these cases, this Court held a hearing to consider the Debtors' request to retain AKD on a contingency-fee basis, considered the objections raised by the UST and Fannie Mae, assessed the reasonableness of the terms of AKD's proposed employment, and preapproved AKD's compensation on the terms memorialized in the AKD § 328 Order. This Court is, therefore, bound by *In re ASARCO* and the plain text of § 328(a) and cannot revisit AKD's compensation terms "unless developments subsequent to the original approval that were incapable of being anticipated render the terms improvident." 702 F.3d at 257.

The Liquidating Trust Advisory Board, the Chapter 11 Trustee/Liquidating Trustee, and Fishman Haygood were all well aware of the AKD § 328 Order and had worked closely with AKD

21

over the course of the Debtors' cases up to October 23, 2023, when the Liquidating Trustee fired AKD at the instruction of the Liquidating Trust Advisory Board and entered into a second, post-Effective Date 27% contingency-fee agreement with Fishman Haygood to prosecute the Hurricane Ida Claims.   Just days prior to the execution of that second contingency-fee agreement with Fishman Haygood, the Court rejected Fannie Mae's § 330 *quantum meruit* arguments and enforced the AKD § 328 Order as to AKD's First Fee App.   Nevertheless, the parties now point to "competing" contingency fee contracts and this Court's Order of February 26, 2025, approving the unopposed 9019 Motion—in which the Litigation Trustee and the Litigation Trust Advisory Board purposefully reserved only one 27% contingency fee for payment of attorneys' fees—and assert that those conditions not only give the Court discretion to convert the AKD § 328 Order into one under § 330, but require this Court to apply a Louisiana law *quantum meruit* analysis to resolve the dispute.

The existence of Fishman Haygood's contract, however, does not constitute a subsequent development that was incapable of being anticipated at the time that the AKD engagement was approved.   Replacing counsel with new counsel to pursue estate causes of action is entirely foreseeable.[8]   Fannie Mae relies heavily on the Fifth Circuit's holding in *In re Coho Energy Inc.*,

---

[8]      Fishman Haygood, Fannie Mae, and even the Liquidating Trustee appear to be appalled that a firm that was terminated could still be entitled to a contingency fee under § 328.   To press their *quantum meruit* argument, they point to a provision in AKD's prepetition retention agreement attached to the Debtors' March 2022 application to employ AKD as special counsel which provides:

> If [AKD] resign[s], is/are discharged or disqualified or otherwise cease[s] to serve as Client's attorney prior to a settlement or final judgment, [AKD] shall receive as compensation for [AKD's] services reasonable fees based on all of the facts and circumstances deemed relevant by Louisiana statutory law and/or jurisprudence, including [AKD's valued hourly rates and the risk taken by [AKD] in accepting legal representation of Client on a contingency fee basis.

[ECF Doc. 60, Ex. A].   But that prepetition retention agreement was superseded by the AKD § 328 Order entered by this Court by agreement of the parties.   *See supra* note 4.   Section 328 of the Bankruptcy Code and the confirmed plan requiring payment of allowed administrative expense claims govern the AKD Fee App, not Louisiana state law.   Again, "Congress enacted § 328(a) to eliminate the previous uncertainty

22

touting it as a roadmap that would allow this Court to perform a *quantum meruit* analysis here and reexamine AKD's preapproved compensation.  [ECF Doc. 1378].  But *In re Coho Energy Inc.* contains an unusual set of facts that materially differ from those present here.[9]  The most obvious and pertinent difference is that the *Coho Energy* bankruptcy court made specific findings invoking § 328's improvidence exception, a requirement that must be satisfied before a court can revisit preapproved compensation.  395 F.3d at 205; *see also In re ASARCO, L.L.C.*, 702 F.3d at 258.  No party here alleges that any subsequent developments that were incapable of being anticipated have occurred and the Liquidating Trustee has represented that none have occurred.[10]

And as to the assertion that this Court's Order approving the parties' voluntary limitation of funds from the settlement of the Hurricane Ida Claims to be earmarked for attorneys' fees somehow forces this Court to perform a *quantum meruit* analysis to resolve this manufactured fee

---

associated with professional compensation in bankruptcy proceedings, **even at the risk of potentially underpaying, or conversely providing a windfall to, professionals retained by the estate.**"  *In re ASARCO, L.L.C.*, 702 F.3d at 258 (emphasis added).

[9]     As an example, the *Coho Energy* bankruptcy court itself approved two 33% contingency-fee agreements under § 328 for the same litigation work without negotiating a fee-split between the firms in advance of the second agreement's approval.  *See* 395 F.3d at 201.

[10]     In his response to this Court's *Order To Show Cause* which inquired about the basis for his request in the 9019 Motion to escrow only one contingency fee for payment of attorneys' fees, the Liquidating Trustee made clear that

> the Court authorized AKD's employment pursuant to 11 U.S.C. § 327(e) and preapproved AKD's compensation structure pursuant to 11 U.S.C. § 328 in the AKD Retention Order.  Under section 328, AKD's terms of compensation as special counsel—including a variable contingency rate of either twenty-one percent (21%) or twenty-seven percent (27%)—are not subject to modification except pursuant to the highly burdensome "improvident" standard set forth by the U.S. Court of Appeals for the Fifth Circuit in *In re ASARCO*, 702 F.3d 250, 257 (5th Cir. 2012).  **The Trustee is unaware at this time of any current circumstances warranting modification pursuant to that standard**, nor is the Trustee aware of any pending request by any person to modify the compensation terms set forth in the AKD Retention Order.  The terms of AKD's compensation were also not modified by any subsequent Order by the Court, including the Settlement Order.

[ECF Doc. 1385, ¶ 10] (emphasis added).

dispute, the Court says this:  Given § 328(a)'s text and purpose, and Fifth Circuit law interpreting the statute, the Court is surprised by the lack of candor demonstrated by the parties in revealing to the Court the presence of a second contingency-fee agreement with Fishman Haygood.  Disclosure of the Fishman Haygood retention agreement would have been relevant to this Court in approving any settlement that only reserved one 27% contingency fee.  Regardless, the Litigation Trust Advisory Board and the Liquidating Trustee chose to limit recovery of attorneys' fees to an amount equal to one 27% contingency fee, knowing that there were two claimants to the fund:  one holding an Order of this Court preapproving compensation under § 328(a) and one holding a post-Effective Date, private contract with the Liquidating Trust.  This Court entered the Order approving their choice.  But that choice made by the parties to limit the fund to pay attorneys' fees does not change § 328(a)'s text, the caselaw interpreting it, or this Court's obligation to enforce it.

Any *quantum meruit* analysis under these circumstances—that is, absent subsequent developments that were incapable of being foreseen—would serve to reduce AKD's preapproved compensation outside the purview of § 328(a).  If the Court were to accede to the parties' requests, such an exercise would run afoul of the plain language and purpose of § 328(a) and the Fifth Circuit's clear interpretation of the statute.  *See In re ASARCO, L.L.C.*, 702 F.3d at 257–61; *see also, e.g.*, *In re Gen. Capacitor, LLC*, No. 19-40279, at *4–5 (Bankr. N.D. Fla. Feb. 25, 2022).  By virtue of the AKD § 328 Order, AKD holds a preapproved, allowed administrative expense claim that came due at the time the Hurricane Ida Claims settlement closed and is required to be paid under the terms of the confirmed plan:

> To the extent not already paid in full as of the Effective Date of the Plan and unless otherwise agreed to by a holder of an Allowed Administrative Claim, the Liquidating Trustee shall pay each holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim, including all commissions due to the Chapter 11 Trustee, in Cash, (a) on the later of:  (i) the Effective Date **(or, if not due, within five (5) Business Days after the date when**

**such Allowed Administrative Claim is due in the ordinary course of business)**; . . . and (iii) at such later date and upon such terms as may be agreed upon by a holder of an Allowed Administrative Claim and the Liquidating Trustee, or (b) at such time and upon such terms as set forth in an order of the Bankruptcy Court . . . .

[ECF Doc. 916, § 2.1] (emphasis added).[11]

Things could have unfolded differently. It is true that, under the confirmed plan, the Liquidating Trustee and the Liquidating Trust Advisory Board were not required to obtain this Court's approval of any post-Effective Date professional's retention. Likewise, the compensation owed to any professional retained under a post-Effective Date contract is not subject to this Court's approval. Indeed, the plan imparts total responsibility on the Liquidating Trustee and the Liquidation Trust Advisory Board for any post-Effective Date professional contract entered into

---

[11]    The Court rejects any argument asserting that AKD somehow forfeited or waived its preapproved administrative expense claim because it did not comply with § 2.2.2 of the confirmed plan establishing a "Professional Fee Bar Date":

> The holder of a Professional Fee Claim must file with the Bankruptcy Court, an application for allowance of such claim within thirty (30) days after the Effective Date. Such notice must include at a minimum the name of the Claimant, the amount of the Claim, and the basis of the Claim. Failure to file this notice timely and properly shall result in the Professional Fee Claim being forever barred and discharged.

[ECF Doc. 916, § 2.2.2]. "Professional Fee Claim" is defined in the confirmed plan as "an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses or other charges, and expenses incurred after the Petition Date and prior to and including the Effective Date." [ECF Doc. 916, art. I]. That definition and § 2.2.2's Professional Fee Bar Date track with the professional compensation owed under § 330 of the Bankruptcy Code (assessed for reasonableness after the services have been rendered) and make little sense in the context of § 328(a). Requiring AKD to adhere to § 2.2.2 of the confirmed plan and file "an application for allowance" of its claim within thirty days of the September 20, 2023, Effective Date to include "the name of the Claimant, the amount of the Claim, and the basis of the Claim," would have been redundant and futile. Every party in interest involved knew of AKD and the basis for its administrative expense claim. This Court had already preapproved compensation for services when it issued the AKD § 328 Order, thus granting AKD an administrative expense claim at the beginning of the Debtors' cases. Section 328 administrative expense claims are not paid *pro rata* with § 330 administrative expenses. *See, e.g.*, *In re Gen. Capacitor, LLC*, No. 19-40279, 2022 WL 3010439, at *2–4 (Feb. 25, 2022) (observing that "[o]nly claims described in Section 503(b) are covered by Section 507(a)(2), and then governed to be paid *pro rata* under Section 726(b)" and § 328(a) compensation claims are not covered by § 503(b)). Moreover, on October 20, 2023, the Professional Fee Bar Date, the Hurricane Ida Claims had yet to be liquidated, so what amount would AKD have listed as the "amount of the Claim"?

on behalf of the Liquidating Trust.  On the other hand, nothing in the confirmed plan prohibited the Liquidating Trustee from seeking relief from the Court.

Again, the Liquidating Trustee, every member of the Liquidating Trust Advisory Board, and Fishman Haygood knew of the existence of the AKD § 328 Order, and had worked closely with AKD throughout the cases through confirmation of Fannie Mae's plan.  Certainly, the Liquidating Trustee, in exercising his fiduciary duty to the Liquidating Trust and its beneficiaries, is free to select the counsel of his choosing to continue to pursue recovery under the Hurricane Ida Claims.  But the Liquidating Trustee could have brokered an agreement between AKD and Fishman Haygood regarding division of fees and transition of the representation before entering into the second 27% contingency-fee contract with Fishman Haygood.  The parties then could have approached the Court and asked the Court to amend the AKD § 328 Order per the agreement of the parties.

But if no agreement could be reached, then the Liquidating Trustee could have placed the problem before the Court, acknowledging the AKD § 328 Order and explaining that he intended to replace AKD with Fishman Haygood as special counsel to continue to pursue recovery on the Hurricane Ida Claims.  A status conference with the Court would have provided the parties with an opportunity for discussion and guidance on the ramifications and priority of the AKD § 328 Order to allow informed decisions all around regarding the second contingency-fee contract.

Without a consensual amendment to the AKD § 328 Order or the presence of  subsequent developments incapable of being anticipated that would allow this Court to take a second look at the reasonableness of AKD's preapproved compensation under the AKD § 328 Order, this Court's hands are tied.

Accordingly,

**IT IS ORDERED** that the Court accepts AKD's voluntary fee reduction in the amount of $325,000, and pursuant to § 328 of the Bankruptcy Code, the AKD § 328 Order, and the terms of the confirmed plan, **OVERRULES** Fishman Haygood, LLP's  and Fannie Mae's objections to the AKD Fee App, and **APPROVES** the AKD Fee App in the amount of $3.3 million, payable by the Liquidating Trustee immediately as an allowed administrative expense claim under the terms of the confirmed plan.

**IT IS FURTHER ORDERED** that the Court abstains from hearing the Fishman Haygood Fee App pursuant to 28 U.S.C. § 1334(c).

New Orleans, Louisiana, this 15th day of September, 2025.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE